delegated the power granted, was not subject to review by the courts. Indeed, the Act conferred no rights on the contractor. Theobald Industries, Inc. v. United States, 126 Ct.Cl. 517; Waller v. United States, 78 F.Supp. 816, 114 Ct. Cl. 640; Centaur Construction Company, Inc. v. United States, 69 F.Supp. 217, 107 Ct.Cl. 498.

■ Plaintiff's claim, therefore, that the Army Audit Agency Report shows that the increase granted did not take into consideration certain items of increased costs is beside the point. The increase was not granted in order to make the contractor whole, but, in the words of the Board, "to prevent impairment of the contractor's productive ability." It was granted "to facilitate the national defense."

It results that plaintiff's motion for summary judgment must be and it is denied. Defendant's motion for summary judgment is granted, and plaintiff's petition is dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.

The CALVERT DISTILLING COMPANY
and Carstairs Bros. Distilling
Co., Inc.,
v.
The UNITED STATES.
No. 600–52.

United States Court of Claims.
July 12, 1957.

Mr. Edgar Barton, New York City, for plaintiff. Messrs. Thomas Kiernan and John Johnston, New York City, were on the briefs.

Mr. Sheldon J. Gitelman, Washington, D. C., with whom was Mr. Acting Assistant Attorney General John N. Stull, Washington, D. C., for defendant, Mr. James P. Garland, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiffs sue for the refund of Internal Revenue taxes on whiskey which taxes were collected from them in circumstances, in which, they claim, the applicable statute relieved them from the taxes.

The plaintiffs are both affiliates of Joseph E. Seagram and Sons, Inc. The plaintiff Carstairs owned and operated a bonded warehouse at Bedford, Ohio. The plaintiff Calvert had such a warehouse at Relay, Maryland. There were in these warehouses in 1946, some 44,000 "packages", apparently barrels, of whiskey which had been "entered" in bond in the 1940–1942 period. In 1946 it was discovered that for a period of about two years before that time, three employees of Carstairs had been stealing whiskey from the warehouse by a method which left no marks on the barrels.

After the discovery of the theft, the Government authorities conducted a regauge of the barrels of whiskey in the warehouse by the usual method of weighing the barrel with the whiskey in it and subtracting the weight of the barrel. This process disclosed that whiskey had been stolen from 169 barrels which were still in the Bedford warehouse. Before the discovery of the thefts in 1946, a good many barrels of whiskey had been shipped from the Bedford warehouse to the Relay warehouse. These were regauged and it was found that whiskey had been stolen from 311 such barrels. In computing the amounts of the thefts, the officials did not take as the minuend the contents of the barrels upon entry in bond, but that figure less the to-be-expected amount of evaporation and leakage, as shown by other barrels similarly situated, but not stolen from. These computations showed that there had been thefts of 1,760.84 gallons from the barrels still at Bedford, and 2,364.92 from the barrels shipped from Bedford to Relay.

The plaintiffs were obliged to pay the usual taxes on the stolen whiskey, and they do not complain of that. But they were also required to pay the taxes on the whiskey lost by evaporation and leakage from the barrels from which whiskey had been stolen, and it is those taxes which they sue to recover.

Title 26 U.S.C. (1946 ed.) sec. 2901, in its subsection (a) provides that distilled spirits in a bonded warehouse may, at the time they are withdrawn from bond, be regauged, and if it is found that there has been a loss by leakage or evaporation without the fault or negligence of the warehouseman, taxes shall be collected only on the amounts remaining at the time of regauging. The subsection names maximum amounts, based upon the period of time the liquor has been in the warehouse, which may be allowed for evaporation and leakage.

Subsection (b) of section 2901 lists eight other circumstances in which the Commissioner of Internal Revenue may abate the tax on liquor which has been lost before it is ready for consumption.

The plaintiffs say they should have had the benefit of section 2901(a); that the quantities of whiskey which were lost by evaporation and leakage were ascertainable by easy calculation and that the fact that whiskey was stolen from the barrels in question is immaterial.

The Government's agents, in imposing the tax here in question, relied on another section of the statutes, 26 U.S.C. (1952 ed.) 2880(a), which reads as follows:

"*Withdrawal from warehouse and collection of tax on spirits subject to excessive leakage*

"(a) *Power of the Commissioner*. If it shall appear at any time that there has been a loss of distilled spirits from any cask or other package deposited in an internal revenue bonded warehouse, other than the loss provided for in section 2901(b), which, in the opinion of the Commissioner, is excessive, he may instruct the District Supervisor of the district in which the loss has occurred to require the withdrawal from warehouse of such distilled spirits, and direct the collector to collect the tax accrued upon the original quantity of distilled spirits entered into the warehouse in such cask or package, notwithstanding that the time specified in any bond given for the withdrawal of the spirits entered into warehouse in such cask or package has not expired. * * *"

This provision is, obviously, very drastic, in that where applicable it taxes the entire original quantity of liquor entered in bond, without any allowance for the evaporation and leakage recognized by section 2901(a) as normal, and which, if the liquor has been in bond for as much as 5½ years, as some of the plaintiffs' liquor had been, may amount to as much as 14½ gallons out of a 50 gallon barrel.

■ Sections 2880(a) and 2901(a) are hard to reconcile. The latter section provides for the abatement of the tax, within the maximum amounts fixed in the statute, in the case of loss by evaporation and leakage without the fault or negligence of the owner. But section 2880 authorizes the Commissioner of Internal Revenue to disregard any loss, if, in his opinion, it is excessive, and tax the entire original amount of the liquor. It will be remembered that section 2901(a) itself fixes maximum limits on the amounts allowable for evaporation and leakage, while permitting abatement up to those maximum amounts. Thus the mere fact that these losses exceed the statutory maximums does not make them "excessive", within the meaning of section 2880(a) and thus permit them to be disregarded entirely.

Although we are in doubt as to the proper application of these apparently contradictory statutory provisions, it seems to us that section 2880(a) must be intended to be applied in cases where the taxing authorities are in doubt as to what has caused the losses; as to whether they were caused by evaporation or leakage or undetected theft or, perhaps, some other cause. In such cases it would be proper that the burdensome consequences of the uncertainty should rest upon the possessor of the liquor, and not upon the public treasury.

■■ In the instant case, the taxing authorities determined, by a method which was approximately correct, how much whiskey had been stolen from each barrel. If, by a more refined method of computation, the Commissioner had determined that the losses from theft were, or may have been, somewhat more, and the losses from evaporation and leakage somewhat less, the plaintiffs could not have complained of that, because, as we have said, the uncertainties should be resolved against the possessor of the whiskey, and not against the treasury. But the amount of the thefts having been determined, determination of how much had leaked and evaporated from each barrel was a problem in subtraction. Applying the usual rule that ambiguities in taxing statutes should be resolved in favor of the taxpayer, if such a resolution is reasonable, we conclude that the Commissioner of Internal Revenue should have given the plaintiffs the benefit of section 2901(a) and that his application to their situation of section 2880(a) was an error of law.

The plaintiffs are entitled to recover, with interest as provided by law, and a judgment will be entered to that effect. The amount of the judgment will be determined in further proceedings under our Rule 38(c), 28 U.S.C.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.